IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD C. GELLOCK,<br>        Plaintiff, | )<br>)<br>) |
| v. | )    C.A. No. 07-8 Erie |
| PRISON HEALTH SERVICES, et al.,<br>        Defendants. | )<br>)<br>) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that:

1. The motion to dismiss amended complaint filed by Defendants Prison Health Services, Inc., and Mark Baker, M.D. [Document # 15] be granted in part and denied in part; and

2. The motion to dismiss Plaintiff's first amended complaint filed by Defendants PA. Department of Corrections, Deputy Supt. Nancy Giroux, and Maxine Overton, R.N. [Document # 22] be granted in part and denied in part.

**II.    REPORT**

    **A.     Relevant Procedural History**

On January 19, 2007, Plaintiff Edward C. Gellock, a prisoner presently incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Defendants Prison Health Services, Inc. ("PHS"), a private corporation that provides health care to SCI-Albion inmates; Nancy Giroux, Deputy Superintendent at SCI-Albion ("Giroux"); Maxine Overton, R.N., Correctional Health Care Administrator at SCI-Albion ("Overton"); Pennsylvania Department of Corrections ("DOC"); and Mark Baker, M.D., an employee of PHS ("Baker").

Plaintiff alleges that Defendants have failed to provide him with proper medical care for his pulmonary disease, in violation of his rights under the Eighth Amendment and the Americans with Disabilities Act ("ADA"), and confiscated his personal property in violation of

1

his Fourth Amendment rights and in retaliation for his filing of a grievance. In particular, Plaintiff claims that: (I) Defendants forced him to have a cell mate, which recklessly endangered his health; (ii) Defendants changed his medications to less expensive varieties, which caused his condition to worsen; and (iii) Defendants DOC, Giroux and Overton unlawfully confiscated a piece of medical equipment, identified as an "Inva-Care Pulmonary Nebulizer," which he claims was his "own personal property" that he requires to treat his shortness of breath. (Document # 3, Complaint, at pp. 7-9; Document # 12, Amended Complaint, at pp. 6-7). In addition, Plaintiff has included claims of negligent supervision and negligence against all Defendants for failing to properly supervise personnel under their supervision (Document # 12, Amended Complaint, at p. 10), and a claim of retaliation against Defendants DOC, Overton, and Giroux for confiscating his nebulizer (Id. at p. 7). As relief for his claims, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief, in the form of a single cell, access to a wheelchair as needed, and examination by a pulmonary specialist.

On May 23, 2007, Defendants Baker and PHS filed a motion to dismiss [Document # 15] arguing that Plaintiff has failed to state a claim upon which relief may be granted. On July 6, 2007, Defendants DOC, Giroux and Overton (collectively referred to as "DOC Defendants") also filed a motion to dismiss on the same basis. [Document # 22]. Plaintiff filed a response to the motion filed by Defendants Baker and PHS on July 2, 2007, essentially restating the allegations of his complaint in greater detail [Document # 19]; however, Plaintiff has not filed any response to the DOC Defendants' motion, despite this Court's Order requiring a response to be filed by August 3, 2007 [Document # 27]. On September 4, 2007, Defendants Baker and PHS filed a reply brief to address Plaintiff's response to their motion [Document # 37]. This matter is now ripe for consideration.

### B.    Relevant Factual History

Plaintiff suffers from Chronic Obstructive Pulmonary Disease ("COPD"), which was diagnosed in February 1997. (Document # 3, Complaint, at p. 6). He is currently serving a

prison term of 1½ to 5 years for violation of his probation, as a result of being convicted of simple assault in Dauphin County, Pennsylvania. (Id.). This incarceration began in March 2003 at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"). (Id.). Plaintiff had previously been incarcerated at SCI-Camp Hill on a prior sentence, during which time Plaintiff alleges that a physician at the institution provided him with a prescription to purchase a nebulizer upon his release from prison. (Document # 12, Amended Complaint, at p. 6). Plaintiff was released from SCI-Camp Hill on his prior sentence in or around February 2003. Prior to his re-arrest in Dauphin County on March 13, 2003, Plaintiff purchased an "Inva-Care Pulmonary Nebulizer," which he took back with him to SCI-Camp Hill. (Id.). Plaintiff alleges that he must use the nebulizer approximately six times a day to aid in opening his air passages. (Id. at p. 7).

While at SCI-Camp Hill, Plaintiff was placed in a single cell "by recommendation of the medical department." (Document # 3, Complaint, at p. 7). On February 8, 2004, Plaintiff was transferred from the special needs unit at SCI-Camp Hill to SCI-Albion, where he was "forced to take a cell-mate." (Id.). In addition, Plaintiff claims that the medication he was prescribed at SCI-Camp Hill was changed to less expensive medication at SCI-Albion, which "caused his condition to in-fact worsen." (Id.).

In early 2007, Plaintiff "made arrangements with the medical dept. at SCI Albion to in-fact have his [nebulizer] ... sent out to a vendor to have the machine 'cleaned.'" (Document # 12, Amended Complaint, at p. 6). However, on March 8, 2007, Plaintiff was advised that the nebulizer was "confiscated" because "the vender reported it would cost more to repair than the machine is worth." (Id.). Plaintiff apparently filed a grievance to "get back his property, replace it, or hold it and not destroy the machine." (Id.). In response to this grievance, Defendant Overton allegedly stated "that the machine is in-fact not [Plaintiff's], that it was the property of the Dept. of Corrections." (Id.).[1]

---

[1] The Court notes that the alleged grievance and response have not been made part of the record.

### C. Standards of Review

#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

#### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

4

than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D. Discussion
#### 1. Eighth Amendment Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[2] involves the "unnecessary and wanton

---

[2]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County

5

infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

### a. Defendants Baker and PHS
#### I. Z-Code Denial and Medication Change

In his response to the motion to dismiss filed by Defendants Baker and PHS, Plaintiff claims that "the fact that [Defendant Baker] is so refusing to order [Plaintiff] be single celled, clearly and abusively is ignoring a serious risk of harm to [Plaintiff]." (Document # 19 at p. 8). However, Plaintiff has not alleged that Defendant Baker has any ability to affect his single cell status, let alone the authority to "order" that Plaintiff be placed in a single cell. Moreover, Plaintiff has not alleged that Defendant Baker had any involvement in the decision to "force" him to be housed with a cell mate. Thus, he has failed to state a cognizable Eighth Amendment claim against Defendant Baker regarding the alleged refusal to place Plaintiff in a single cell.

Plaintiff alleges further that Defendants Baker and PHS took him off medication that he was receiving at SCI-Camp Hill, which Plaintiff claims was not only stabilizing, but improving his condition, and prescribed less expensive, generic medications. (Document # 19 at p. 12). As a result, Plaintiff claims that his condition has worsened. (Document # 3, Complaint, at p. 7). In addition, Plaintiff complains that Defendants Baker and PHS have failed to have him examined

---

Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

and/or treated by a pulmonary specialist for over three years. (Document # 19 at p. 14). Neither of these claims implicate deliberate indifference on the part of these Defendants; rather, they merely represent Plaintiff's disagreement with the course of treatment he has been provided. A prisoner's disagreement with a course of medical treatment does not sustain a cognizable Eighth Amendment claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976). Thus, Defendant PHS and Baker's motion to dismiss the foregoing Eighth Amendment claims should be granted.

### ii. *Respondeat Superior*

Plaintiff also alleges that, "in light of numerous complaints made directly to PHS and Baker," a jury may conclude that Defendant PHS "actually had a policy of not taking any reasonable steps to not only train its employees, but to have them provide reasonable albeit potentially costly healthcare to inmates such as [Plaintiff]." (Document # 19 at p. 11). Plaintiff alleges further that PHS "literally place[s] a fiscal budget over human life," and "employs physicians with 'questionable backgrounds'" who are "'not qualified' to determine what [Plaintiff's] needs are regarding his pulmonary disease." (Document # 3, Complaint, at p. 9; Document # 12, Amended Complaint, at p. 5).

"Just as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under Section 1983 for its employees' deprivations of others' civil rights." Williams v. Sebek, 2007 WL 790386 at * 6 (W.D.Pa. Mar. 14, 2007)(citations omitted).[3] Thus, to assert a claim against PHS, "Plaintiff must show that a constitutional deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with 'final authority to establish municipal policy.'" Id., quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

---

[3] Every circuit to consider the matter has extended the holding of *Monell* to private corporations. Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992)(citing cases).

7

Here, as in <u>Sebek</u>, Plaintiff is essentially alleging that PHS has a policy or custom of providing inadequate medical care in an effort to maximize its profits. In deciding a motion to dismiss, the Court must accept the Plaintiff's allegations as true. Plaintiff's allegations in this case indicate that PHS maintains a policy of failing to provide necessary medical treatment based on non-medical reasons, i.e., cost. Giving Plaintiff the benefit of all inferences to which he is entitled at the pleadings stage, this Court finds that Plaintiff has met the minimal standards necessary to state a cognizable claim against PHS for maintaining an unconstitutional policy of providing inadequate medical care. As a result, Defendant PHS's motion to dismiss such claim should be denied.

### b. Defendants DOC, Overton, and Giroux

Plaintiff claims that the DOC Defendants "forced" him to take a cell mate, which constituted "nothing less than 'reckless endangerment,'" because his "immune system is greatly diminished," and "the slightest 'germ,' ie: head cold, allergies, infections of any kind that a cell mate might have, could literally kill [Plaintiff]." (Document # 3, Complaint, at p. 8). He also claims that the DOC's z-code policy is "illegal and unconstitutional, and denial to the [Plaintiff] is nothing less than malicious and an intentional disregard to [Plaintiff's] life and liberty, and that is truly cruel and unusual punishment."

### I. Sovereign Immunity

Defendant DOC contends that it is a state agency or department and, as such, is not a "person" under 42 U.S.C. § 1983. <u>Will v. Michigan Dept. Of State Police</u>, 491 U.S. 58, 71 (1989). In addition, Defendants Giroux and Overton argue that, to the extent they are being sued in their official capacities with the DOC, they are also not "persons" under Section 1983. <u>Id</u>. The Court agrees. As a result, to the extent Plaintiff seeks monetary damages against Defendant DOC and Defendants Giroux and Overton, in their official capacities with the DOC, Plaintiff's Eighth Amendment claim against the DOC Defendants is barred by the Eleventh Amendment and should be dismissed. <u>Chittister v. Dep't of Community and Economic Development</u>, 226

F.3d 223 (3d Cir. 2000)(Eleventh Amendment bars individuals from seeking monetary damages from state governments or state agencies).[4]

Notwithstanding the foregoing, Plaintiff also seeks declaratory and injunctive relief against the DOC Defendants, as well as monetary damages against Defendants Giroux and Overton in their individual capacities. To this extent, Plaintiff's Eighth Amendment claims against the DOC Defendants are not barred by the doctrine of sovereign immunity and will be considered below.

### ii. Z-Code Denial

The Court recognizes that, in general, the denial of z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation. Seawright v. Stachelek, 1992 WL 6796 at * 2 (E.D.Pa. Jan. 13, 1992), citing Rhodes v. Chapman, 452 U.S. 337 (1986). The Third Circuit has noted, however, that "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996)(finding that, if proven, allegations that plaintiffs were subject to sexual assault and that prison officials failed to protect them adequately by placing them in double cells, could establish deliberate indifference, "irrespective of whether the harm resulted from double celling or other conditions of confinement"). Here, Plaintiff argues that single cell status is necessary because of his medical condition..

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong of the Farmer test is an objective one. Plaintiff must demonstrate that

---

[4] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states and state agencies are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. In this context, the Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems. Helling v. McKinney, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health). See also Hutto v. Finney, 437 U.S. 678, 682 (1978) (Where inmates were crowded into cells with other inmates having infectious hepatitis and venereal disease, the court held that the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all those exposed).

The second prong of the Farmer test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

In this case, Plaintiff claims that, by forcing him to be housed with a cell mate, the DOC Defendants have placed him at risk of being exposed to dust and germs that could cause him to contract a serious illness because of his diminished immune system. This threat of serious health problems is sufficient to meet the first prong of the Farmer test. See, e.g. Helling, 509 U.S. at 33-34.

With regard to the second prong, Plaintiff has alleged that, before being transferred to SCI-Albion, he had been housed in a single cell at SCI-Camp Hill upon the recommendation of the medical department. Plaintiff claims that the DOC Defendants were aware of this fact, as well as Plaintiff's medical condition; yet, despite this knowledge, they chose to place Plaintiff in a double cell. These allegations, although sparse, are sufficient to meet the second prong of the Farmer test. Although the proof of a claim is far removed from the successful pleading of it,

Plaintiff has, at least, alleged a cognizable Eighth Amendment claim against the DOC Defendants for their refusal to place him in a single cell to survive this motion. Accordingly, the DOC Defendants' motion to dismiss this claim should be denied, to the extent Plaintiff seeks declaratory and injunctive relief, as well as monetary damages against Defendants Giroux and Overton in their individual capacities.

### 2. Americans With Disabilities Act Claim

Plaintiff claims that "the deliberate refusal of the prison officials & (medical Defendants) to accommodate the disability related needs [of Plaintiff] in such fundamentals such as medical care, did constitute exclusion from participation in denial of benefits of medical services" under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Title II of the ADA provides:

> "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. "State prisons fall squarely within the statutory definition of 'public entity'" under Title II, and therefore this provision applies to state prisoners such as Plaintiff while they are incarcerated. Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

Initially, it is noted that an ADA claim under Title II may only be brought against a public entity, which, in this case, is the DOC. As a result, Plaintiff's ADA claim against all other Defendants must be dismissed. Secondly, a claim under Title II requires Plaintiff to show that:

> 1) he is an individual with a disability;
>
> 2) he is otherwise qualified for the program or services sought or would be qualified if the defendant had made reasonable modifications to the program or services; and
>
> 3) he was excluded from the program or services solely by reason of [his] disability.

11

Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995). Here, even if the Court presumes, for argument sake, that Plaintiff is a qualified person with a disability, he would still have the nonsensical burden of showing that he was excluded from receiving medical services solely by reason of his disability. This he cannot do. As such, Plaintiff is unable to meet the third element of his Title II claim and such claim should, therefore, be dismissed.

### 3. Fourth Amendment Claim

Plaintiff claims that the DOC Defendants' confiscation of his nebulizer constituted an illegal seizure of property in violation of his Fourth Amendment rights.(Document # 12, Amended Complaint, at pp. 7, 10). However, the United States Supreme Court has held that the Fourth Amendment has no applicability to prison cells. Hudson v. Palmer, 468 U.S. 517, 536 (1984). Thus, Plaintiff is unable to maintain a claim based upon the Fourth Amendment, and the same should be dismissed.

### 4. Retaliation

Plaintiff claims that the confiscation of his nebulizer was in retaliation for his filing of a grievance. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

> 2) he suffered "adverse action" at the hands of prison officials[5]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[6]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that he filed a grievance asking that his nebulizer be returned, replaced or held, but not destroyed. (Document # 12, Amended Complaint, at p. 7). In response, however, Plaintiff alleges that Defendants confiscated the nebulizer, claiming that the property was not his, but was the property of the DOC. Based on these allegations, Plaintiff has

---

[5] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[6] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

13

demonstrated that he engaged in the constitutionally protected activity of filing a grievance, that he suffered the adverse action of having his nebulizer confiscated, and that there was, at least, a suggestive temporal proximity between the filing of his grievance and the alleged confiscation. Accepting these allegations as true, for the sake of considering the DOC Defendants' motion to dismiss, Plaintiff has satisfied the minimal requirements of setting forth a prima facie case of retaliation. The burden now shifts to the DOC Defendants to demonstrate, by a preponderance of the evidence, that they would have confiscated the nebulizer regardless of Plaintiff's filing of a grievance, for reasons reasonably related to a legitimate penological interest. This they have not done at this early stage of the proceeding. As a result, Plaintiff's retaliation claim against the DOC Defendants should be allowed to proceed.

### 5. Negligent Supervision and Negligence
#### a. DOC Defendants

Plaintiff asserts state law claims of negligent supervision and negligence against the DOC Defendants for allegedly failing to properly supervise the personnel under their supervision, "which resulted in harm and injury to Plaintiff with malice and disregard." (Document # 12, Amended Complaint, at p. 10). The DOC Defendants claim that they are entitled to sovereign immunity and, thus, Plaintiff's state law negligence claims should be dismissed.

Under 1 Pa.C.S.A. § 2310, the doctrine of sovereign immunity bars state law tort claims against Commonwealth agencies, as well as employees of Commonwealth agencies acting within the scope of their duties.[7] The DOC, as an agency of the Commonwealth, and Defendants Giroux and Overton, as employees of the DOC, are entitled to the protection

---

[7]

1 Pa.C.S.A. § 2310 provides, in relevant part:

> Pursuant to Section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

14

afforded under the doctrine of sovereign immunity. Maute v. Frank, 657 A.2d 985, 986 (Pa.Super. 1995)(state prison officials enjoy sovereign immunity). However, 42 Pa.C.S.A. § 8522(b) creates a medical professional liability exception to 1 Pa.C.S.A. § 2310.[8] This exception defeats the immunity asserted by Defendant Overton, SCI-Albion's Health Care Administrator, but does not vitiate the immunity asserted by either the DOC or Defendant Giroux. Accordingly, Plaintiff's state law negligence claims against the Defendants DOC and Giroux should be dismissed, but Plaintiff's state law negligence claim against Defendant Overton should be allowed to proceed..

### b. Defendants PHS and Baker

Plaintiff also brings state law negligent supervision and negligence claims against Defendants PHS and Baker. Although the negligent supervision claim is asserted against both Defendants, Plaintiff has failed to identify anyone who was working under Defendant Baker's supervision that he allegedly failed to supervise. Thus, the Court construes Plaintiff's negligent supervision claim to be against Defendant PHS, only.

With regard to Plaintiff's negligence claims against Defendant PHS, PHS argues that Plaintiff has failed to comply with the corporate negligence doctrine established by the Pennsylvania Supreme Court in Thompson v. Nason Hospital, 527 Pa. 330, 591 A.2d 703 (1991). According to this doctrine, in order to state a cause of action for corporate liability regarding medical attention provided to individuals, Plaintiff must allege a failure to perform

---

[8] 42 Pa.C.S.A. § 8522(b) provides, in relevant part:

> (b) Acts which may impose liability. - The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> \*              \*              \*
>
> (2) Medical-professional liability. - Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, nurse or related health care personnel.

15

one of the following duties: (1) the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) the duty to select and retain only competent physicians; (3) the duty to oversee all individuals who practice medicine within its walls as to patient care; and (4) the duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients. Defendant PHS argues that Plaintiff's allegations never address any of these four duties and, therefore, Plaintiff's negligence claims should be dismissed. This Court disagrees.

In his amended complaint, Plaintiff claims that "PHS employs physicians with questionable backgrounds" and that Defendant Baker is "without question 'not qualified' to determine what [Plaintiff] needs are regarding his pulmonary disease." (Document # 12, Amended Complaint, at p. 5). These allegations plainly implicate the second duty identified in Thompson - the duty to select and retain only competent physicians. Thus, Plaintiff's allegations are sufficient to support his state law negligence claims against Defendant PHS, and Defendant PHS's motion to dismiss these claims should be denied.

With regard to Defendant Baker, Plaintiff's negligence claim is less clear. Although Plaintiff does not specifically allege that Defendant Baker's actions deviated from acceptable professional standards, he does make several statements questioning Defendant Baker's ability to practice medicine competently. Thus, the Court construes Plaintiff's negligence claim against Defendant Baker as a medical negligence claim, rather than simply an ordinary negligence claim. As such, Plaintiff is bound to comply with Pennsylvania Rule of Civil Procedure 1042.3, which provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party ...

Pa.R.C.P. 1042.3(a). The certificate of merit must state either: (1) that an appropriate licensed professional has opined in writing that there is a reasonable probability that the defendant's care did not measure up to professional standards and caused the plaintiff's injury; (2) that the claim against the defendant is based on respondeat superior (in which case, the plaintiff must obtain an

16

opinion from an appropriate licensed professional that there is a reasonable probability that the care provided by the defendant's agents did not measure up to professional standards and caused the plaintiff's injury); or (3) that expert testimony is unnecessary to the plaintiff's claim. Pa.R.C.P. 1042.3(a).

Rule 1042.3 applies regardless of whether state law claims are brought under diversity jurisdiction or under supplemental jurisdiction, as here. See Rodriguez v. Smith, 2005 WL 1484591 at * 7 n. 13 (E.D.Pa. June 21, 2005). In this case, it is undisputed that Plaintiff did not submit a certificate of merit within the time period required by this rule. As a result, Plaintiff has failed to comply with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure and his state law negligence claim against Defendant Baker should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that

1. The motion to dismiss amended complaint filed by Defendants Prison Health Services, Inc., and Mark Baker, M.D. [Document # 15] be granted in part and denied in part, as follows:

    a.  Plaintiff's Eighth Amendment claims against Defendants Baker and PHS related to the failure to place Plaintiff in a single cell and the change of Plaintiff's medications should be dismissed;

    b.  Plaintiff's Eighth Amendment claim against Defendant PHS for maintaining an unconstitutional policy of providing inadequate medical care should be allowed to proceed; and

    c.  Plaintiff's state law negligence claims against Defendant PHS should be allowed to proceed, while Plaintiff's state law negligence claim against Defendant Baker should be dismissed.

2. The motion to dismiss Plaintiff's first amended complaint filed by Defendants PA. Department of Corrections, Deputy Supt. Nancy Giroux, and Maxine Overton, R.N. [Document # 22] be granted in part and denied in part, as follows:

    a.  Plaintiff's Eighth Amendment claim against Defendant DOC, and Defendants Giroux and Overton in their official capacities, should be dismissed to the extent Plaintiff seeks monetary damages. To the extent Plaintiff seeks declaratory and injunctive relief against the DOC Defendants, as well as monetary damages against Defendants Giroux and Overton in their individual capacities, Plaintiff's Eighth Amendment claim should be allowed to proceed against the DOC Defendants;

17

> b. Plaintiff's claim under the Americans with Disabilities Act should be dismissed;
>
> c. Plaintiff's Fourth Amendment claim related to the confiscation of his personal property should be dismissed;
>
> d. Plaintiff's retaliation claim related to the confiscation of his personal property should be allowed to proceed;
>
> e. Plaintiff's state law negligence claims against Defendants DOC and Giroux should be dismissed.; however, Plaintiff's state law negligence claim against Defendant Overton should be allowed to proceed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: November 30, 2007

cc: The Honorable Sean J. McLaughlin
United States District Judge