IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD C. GELLOCK,<br>          Plaintiff, | )<br>) | |
|          v. | )<br>) | C.A. No. 07-8 Erie |
| PRISON HEALTH SERVICES, et al.,<br>          Defendants. | )<br>)<br>) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that:

1. The motion for summary judgment filed by Defendant Prison Health Services, Inc. [Document # 63] be granted.

2. The motion for summary judgment filed by Defendants PA. Department of Corrections, Deputy Supt. Nancy Giroux, and Maxine Overton, R.N. [Document # 70] be granted.

It is further recommended that this case be closed.

**II.    REPORT**

    **A.    Relevant Procedural History**

On January 19, 2007, Plaintiff Edward C. Gellock, a prisoner presently incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Defendants Prison Health Services, Inc. ("PHS"), a private corporation that provides health care to SCI-Albion inmates; Nancy Giroux, Deputy Superintendent at SCI-Albion ("Giroux"); Maxine Overton, R.N., Correctional Health Care Administrator at SCI-Albion ("Overton"); Pennsylvania Department of Corrections ("DOC"); and Mark Baker, M.D., an employee of PHS ("Baker").[1] He subsequently filed an

---

[1] Defendants Giroux, Overton, and DOC are collectively referred to herein as "DOC Defendants," while Defendants

1

Amended Complaint against the same Defendants on April 11, 2007. [Document # 12].

In his original and Amended Complaints, Plaintiff alleged that Defendants failed to provide him with proper medical care for his pulmonary disease, in violation of his rights under the Eighth Amendment and the Americans with Disabilities Act ("ADA"), and confiscated his personal property in violation of his Fourth Amendment rights and in retaliation for his filing of a grievance. (Document # 3, Complaint, at pp. 7-9; Document # 12, Amended Complaint, at pp. 6-7). In addition, Plaintiff included claims of negligent supervision and negligence against all Defendants for failing to properly supervise personnel under their supervision (Document # 12, Amended Complaint, at p. 10), and a claim of retaliation against Defendants DOC, Overton, and Giroux for confiscating his nebulizer (Id. at p. 7). As relief for his claims, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief, in the form of a single cell, access to a wheelchair as needed, and examination by a pulmonary specialist.

On November 30, 2007, this Court issued a Report and Recommendation recommending that motions to dismiss filed on behalf of the DOC Defendants and the PHS Defendants, respectively, each be granted in part and denied in part. [Document # 38]. This recommendation was adopted by Memorandum Order of District Judge Sean J. McLaughlin on February 8, 2008. [Document # 41]. As a result, the following claims remain in this case: (i) Plaintiff's Eighth Amendment claim against Defendant PHS premised upon its alleged unconstitutional policy of providing inadequate medical care; (ii) Plaintiff's state law negligence claims against Defendant PHS; (iii) Plaintiff's Eighth Amendment claim against the DOC Defendants in their official capacities, to the extent he seeks only declaratory and injunctive relief; (iv) Plaintiff's Eighth Amendment claims against Defendants Giroux and Overton in their individual capacities; (v) Plaintiff's retaliation claim against the DOC Defendants related to the alleged confiscation of his personal property; and (vi) Plaintiff's state law negligence claim against Defendant Overton.[2]

---

PHS and Baker are collectively referred to as "PHS Defendants."

[2]

All claims against Defendant Baker have been dismissed from this case.

After completing discovery, Defendant PHS and the DOC Defendants have since filed motions for summary judgment [Document ## 63, 70, respectively], seeking entry of judgment in their favor based upon Plaintiff's failure to exhaust his administrative remedies and/or his failure to adequately substantiate his claims. Plaintiff has filed a response to these motions [Document # 78], and they are now ripe for consideration.

### B. Relevant Factual History

Plaintiff suffers from Chronic Obstructive Pulmonary Disease ("COPD"), which was diagnosed in February 1997. (Document # 3, Complaint, at p. 6). He is currently serving a prison term of 1½ to 5 years for violation of his probation, as a result of being convicted of simple assault in Dauphin County, Pennsylvania. (Id.). This incarceration began in March 2003 at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"). (Id.). Plaintiff had previously been incarcerated at SCI-Camp Hill on a prior sentence, during which time Plaintiff alleges that a physician at the institution provided him with a prescription to purchase a nebulizer upon his release from prison. (Document # 12, Amended Complaint, at p. 6). Plaintiff was released from SCI-Camp Hill on his prior sentence in or around February 2003. Prior to his re-arrest in Dauphin County on March 13, 2003, Plaintiff purchased an "Inva-Care Pulmonary Nebulizer," which he took back with him to SCI-Camp Hill. (Id.). Plaintiff alleges that he must use the nebulizer approximately six times a day to aid in opening his air passages. (Id. at p. 7).

While at SCI-Camp Hill, Plaintiff was placed in a single cell "by recommendation of the medical department." (Document # 3, Complaint, at p. 7). On February 8, 2004, Plaintiff was transferred from the special needs unit at SCI-Camp Hill to SCI-Albion, where he was "forced to take a cell-mate." (Id.). In addition, Plaintiff claims that the medication he was prescribed at SCI-Camp Hill was changed to less expensive medication at SCI-Albion, which "caused his condition to in-fact worsen." (Id.).

In early 2007, Plaintiff "made arrangements with the medical dept. at SCI Albion to in-fact have his [nebulizer] ... sent out to a vendor to have the machine 'cleaned.'" (Document

3

# 12, Amended Complaint, at p. 6). However, on March 8, 2007, Plaintiff was advised that the nebulizer was "confiscated" because "the vender reported it would cost more to repair than the machine is worth." (Id.). Plaintiff apparently filed a grievance to "get back his property, replace it, or hold it and not destroy the machine." (Id.). In response to this grievance, Defendant Overton allegedly stated "that the machine is in-fact not [Plaintiff's], that it was the property of the Dept. of Corrections." (Id.).[3]

### C.     Standards of Review

#### 1.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990). The

---

[3] The Court notes that the alleged grievance and response have not been made part of the record.

4

burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a

complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Exhaustion
#### 1. Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement.

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

## 2. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[5] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include

---

[5]

There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

7

> a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### 3.  Exhaustion and Procedural Default Applied

Both the DOC Defendants and Defendant PHS argue that Plaintiff has failed to exhaust his administrative remedies with regard to the remaining claims against them.

#### a.  Eighth Amendment Claims Against PHS

Defendant PHS has attached copies of all administrative grievances Plaintiff has filed and argues that "none of the grievances he submitted ever mentioned any policy or practice of PHS concerning nebulizers or Z coding." (Document # 64 at unnumbered p. 6; Document # 66,

8

Exhibits C-I).⁶  After reviewing these grievances, this Court agrees that none of the grievances challenged PHS's alleged unconstitutional policy of providing inadequate medical care. Plaintiff has not produced any evidence to the contrary as to PHS. As a result, Plaintiff has failed to exhaust his administrative remedies with regard to his remaining Eighth Amendment claim against Defendant PHS, and, having now been procedurally defaulted, such claim should be dismissed.

### b.  Remaining Constitutional Claims Against DOC Defendants

The DOC Defendants have submitted the Declaration of Tracy L. Pollock, a DOC Grievance Review Officer, who certifies the following:

> 10.  I have reviewed the grievance appeal records on Inmate Edward C. Gellock, Inmate Number FN-4178, in relation to the above captioned case. These records reflect that Inmate Gellock has taken only one grievance to final review, that being Grievance No. 234234. The final review of that grievance was submitted on 7-31-08 and a response was issued on 9-2-08.
>
> 11.  There is no record of Inmate Gellock filing a Step 3 Appeal to the Secretary's Office for Final Review for Grievance Nos. 141759, 145232, 146478, 159052 or 181551.
>
> 12.  As a result, Inmate Gellock has not exhausted Grievance Nos. 141759, 145232, 146478, 159052 or 181551.

(Document # 73, Exhibit 13 at ¶¶ 10-12).  Thus, according to Ms. Pollock, the only grievance for which Plaintiff exhausted his administrative remedies is Grievance # 234234, wherein he claims that SCI Albion's administration and staff "deviat[ed] from the D.O.C. policy and procedures manual No. 11.2.1 evaluating and processing inmates for single cell status (z-code)..., by telling me it[']s not there [sic] job to start the paper work to z-code me when I asked them to z-code me." (Document # 73, Exhibit 8). It is, at least, arguable that this grievance sufficiently encompasses Plaintiff's Eighth Amendment challenge of the DOC's z-code policy and the DOC Defendants' denial of z-code status; however, the grievance was not initiated until

---

⁶ Plaintiff does not dispute that copies of all grievances have been submitted to this Court. In fact, he lists them, individually, in his response. (Document # 78 at pp. 31-33).

July 1, 2008, nearly eighteen months after the instant lawsuit was filed, and nearly fifteen months after Plaintiff filed his first amended complaint. Because exhaustion of administrative remedies is a condition **precedent** to the filing of a civil action, Plaintiff did not properly exhaust this grievance in accordance with the requirements 42 U.S.C. § 1997e(a). See Oriakhi v. United States, 165 Fed. Appx. 991 (3d Cir. 2006)("there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court")(citation omitted). Thus, it would appear that none of Plaintiff's claims against the DOC Defendants were properly exhausted in accordance with the PLRA's requirements.

Nevertheless, Plaintiff has responded that he "was attempting to exhaust administrative remed[ies] properly but Defendants refused to reply and became very resistant and retaliatory in nature to prevent Plaintiff's attempts." (Document # 78 at p. 30). In particular, Plaintiff claims that, he appealed three (3) other grievances to SCI-Albion's Superintendent, but none of the appeals ever received a response. (Document # 78 at pp. 31-32).

Although courts generally require strict compliance with the exhaustion requirement, there are limited circumstances in which an inmate's failure to exhaust may be excused by the courts. See generally Davis v. Warman, 249 Fed. Appx. 365 (3d Cir. 2002) (contemplating an exception to the exhaustion requirement). Non-exhaustion may be excused where no administrative remedies are available to an inmate. A prisoner need not exhaust every administrative remedy, only those administrative remedies which are **available** to him. Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). The availability of administrative remedies to a prisoner is a question of law. Ray, 285 F.3d at 291.

Courts have construed available to mean "capable of use; at hand." Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002). "A remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under § 1997e." Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (holding that an inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to

10

him.). See also Boyd v. Corrections Corp. Of America, 380 F.3d 989, 996 (6th Cir. 2004)("administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)("we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)("once [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him").

Here, Plaintiff claims that he appealed the denials of Grievance Nos. 141759, 159052, and 188173 to SCI-Albion's Superintendent, but he never received a response. With regard to Grievance Nos. 141759 and 159052, Plaintiff has supported this claim by submitting copies of request slips that he sent to SCI-Albion's Grievance Coordinator stating that he had not received responses from the Superintendent (Document # 78, Exhibits M-4 and P-5). Despite these request slips, the record is devoid of any evidence that responses were ultimately provided by the Superintendent. This lack of response from the Superintendent rendered administrative remedies unavailable with regard to Grievance Nos. 141759 and 159052 and, thus, said grievances are deemed exhausted. Because both of these grievances complained about the DOC Defendants' failure and/or refusal to grant Plaintiff z-code status,, this Court finds that Plaintiff's Eighth Amendment claim against the DOC Defendants challenging the denial of z-code status has been exhausted and must be reviewed on its merits.

Plaintiff also claims that the Superintendent failed to respond to his appeal of Grievance No. 188173; however, he has not provided any evidence that such an appeal was ever filed. Furthermore, this grievance challenged the medical department's failure to provide Plaintiff with Atrovent, a medical solution used in his nebulizer, for a period of, at least, four days. (Document # 66, Exhibit C). Even if Plaintiff could prove that this grievance should be deemed exhausted due to the Superintendent's failure to respond to his appeal, the claim raised in this grievance is not at issue in this case. Thus, the exhaustion or non-exhaustion of this grievance is of no consequence here.

Based upon the foregoing, therefore, this Court finds that Plaintiff has failed to exhaust

his administrative remedies with regard to all of his claims against the DOC Defendants, other than his Eighth Amendment claim challenging the denial of z-code status. Since the time period for exhausting such claims has long passed, such claims are also procedurally defaulted. As a result, all of Plaintiff's claims against the DOC Defendants, other than Plaintiff's Eighth Amendment claim challenging the denial of z-code status, should be dismissed from this case for Plaintiff's failure to exhaust administrative remedies. The z-code status claim is review on the merits.

### E.    Discussion
#### 1.    Eighth Amendment Claim - Z-Code Denial

Plaintiff claims that the DOC Defendants "forced" him to take a cell mate, which constituted "nothing less than 'reckless endangerment,'" because his "immune system is greatly diminished," and "the slightest 'germ,' ie: head cold, allergies, infections of any kind that a cell mate might have, could literally kill [Plaintiff]." (Document # 3, Complaint, at p. 8). He also claims that the DOC's z-code policy is "illegal and unconstitutional, and denial to the [Plaintiff] is nothing less than malicious and an intentional disregard to [Plaintiff's] life and liberty, and that is truly cruel and unusual punishment."

The Court recognizes that, in general, the denial of z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation. Seawright v. Stachelek, 1992 WL 6796 at * 2 (E.D.Pa. Jan. 13, 1992), citing Rhodes v. Chapman, 452 U.S. 337 (1986). The Third Circuit has noted, however, that "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996)(finding that, if proven, allegations that plaintiffs were subject to sexual assault and that prison officials failed to protect them adequately by placing them in double cells, could establish deliberate indifference, "irrespective of whether the harm resulted from double celling or other conditions of confinement"). Here, Plaintiff argues that single cell status is necessary to protect his medical condition..

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must

12

show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong of the Farmer test is an objective one. Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. In this context, the Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems. Helling v. McKinney, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health). See also Hutto v. Finney, 437 U.S. 678, 682 (1978) (Where inmates were crowded into cells with other inmates having infectious hepatitis and venereal disease, the court held that the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all those exposed).

The second prong of the Farmer test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

In this case, Plaintiff claims that, by forcing him to be housed with a cell mate, the DOC Defendants have placed him at risk of being exposed to dust and germs that could cause him to contract a serious illness because of his diminished immune system. Plaintiff alleges further that, before being transferred to SCI-Albion, he had been housed in a single cell at SCI-Camp Hill upon the recommendation of the medical department. Plaintiff claims that the DOC Defendants were aware of this fact, as well as Plaintiff's medical condition; yet, despite this knowledge, they chose to place Plaintiff in a double cell.

Defendants have refuted Plaintiff's claims by submitting, *inter alia*, the Declaration of

Tricia Gamble, Corrections Counselor at SCI-Albion, who has certified, in pertinent part, the following:

> 5. I am familiar with the DOC's Reception and Classification Policy (11.2.1) which, at Section 5, addresses Single Celling ("Z" Code) and Double Celling Housing.
>
> 6. The selection criteria for Single Celling or "Z" code are listed in the Reception and Classification Policy at Section 5.C. These criteria generally address an inmate's behavioral and adjustment issues. For example, "Z" code would be appropriate for inmates who tend to victimize other inmates or, conversely, for inmates who are easily victimized by other inmates. The only medically based criteria listed in Section 5.C. relates to inmates 'with certain medical conditions (an infectious disease, colostomy, etc.), indicating a possible need for a single cell.'
>
> 7. Inmates in need of a single cell for a medical purpose other than that listed in Section 5.C.1.b. are not evaluated under Section 5 of the Reception and Classification Policy; rather, **such cell assignments are initiated by the medical department**.
>
> 8. I am familiar with the Plaintiff in this case, Edward C. Gellock, FN-4178, and I have reviewed his prison records as they relate to his housing status.
>
> 9. Since his arrival at SCI-Albion, Inmate Gellock has not had a "Z" code and is therefore eligible to be double celled with another inmate.
>
> 10. Inmate Gellock does not meet any of the selection criteria for a "Z" code as established in the DOC'S Reception and Classification Policy. For this reason, there has never been a vote sheet (DC-46) circulated on the issue of a "Z" code for Inmate Gellock.
>
> 11. To the best of my knowledge, **the medical department at SCI-Albion has never indicated that Inmate Gellock requires a single cell because of his medical condition.**

(Gamble Declaration attached as Exhibit 12 to Document # 73, at ¶¶ 5-11)(emphasis added).

The last point made by Ms Gamble is corroborated by the Declaration of Defendant Overton, the DOC's Corrections Health Care Administrator, who has also certified that "the medical department has never requested that Inmate Gellock be assigned to a single cell because of his health or medical condition." (Overton Declaration attached as Exhibit 11 to Document # 73, at ¶ 7). Plaintiff has failed to contradict these declarations with any evidence or

14

medical opinion that might substantiate his claim that a Z-code was medically necessary and that the DOC Defendants were deliberately indifferent to such need by failing to grant him Z-code status.[7] Given the lack of a medical recommendation that Plaintiff be given a Z-code due to his medical condition, there simply is nothing in the record to suggest that any DOC Defendant knew that Plaintiff faced a substantial risk of serious harm from being double-celled, yet disregarded that risk by failing to take reasonable steps to assign him a Z-code. As a result, Plaintiff is unable to establish that the DOC Defendants were deliberately indifferent to his medical needs, and summary judgment should be entered in favor of the DOC Defendants with regard to Plaintiff's Eighth Amendment claim challenging the denial of Z-code status.

### 2. Negligent Supervision and Negligence Claims

Plaintiff asserts state law claims of negligent supervision and negligence against Defendant Overton for allegedly failing to properly supervise the personnel under her supervision, "which resulted in harm and injury to Plaintiff with malice and disregard." (Document # 12, Amended Complaint, at p. 10). These are pendent state law claims under Pennsylvania law, over which this Court is not required to exercise jurisdiction absent the existence of a cognizable federal claim. Since this Court has already determined that Plaintiff's federal claims under 42 U.S.C. § 1983 must fail as a matter of law, this Court does not have an independent basis on which to exercise jurisdiction over Plaintiff's state law claims. As a result, Plaintiff's state law negligence claims should be dismissed.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that

---

[7] In fact, the only substantive argument offered by Plaintiff is that, "when [he] was an inmate at SCI-Camp Hill, he had "single cell status" because of his medical condition from 1997 Feb. Until March 2003...." (Document # 78 at p. 22); however, during his deposition in this case, Plaintiff acknowledged that, although he was provided a single cell at SCI-Camp Hill, he was never given a Z-code. (Page 65 of Plaintiff's deposition transcript attached as Exhibit 5 to Document # 73, at p. 17).

15

1. The motion for summary judgment filed by Defendant Prison Health Services, Inc. [Document # 63] be granted.

2. The motion for summary judgment filed by Defendants PA. Department of Corrections, Deputy Supt. Nancy Giroux, and Maxine Overton, R.N. [Document # 70] be granted.

It is further recommended that this case be closed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 8, 2009

cc: The Honorable Sean J. McLaughlin
United States District Judge